STATE of Louisiana ex rel. Jack P. F. GREMILLION, Attorney, Plaintiff-Respondent,

v.

NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE et al., Defendants-Petitioners.

NEW ORLEANS BRANCH OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE et al., Plaintiffs,

v.

Wade O. MARTIN, Jr., Secretary of State, State of Louisiana, et al., Defendants.

Nos. 1678, 8554.

United States District Court
E. D. Louisiana,
New Orleans Division.

Feb. 5, 1960.

In No. 1678:

Jack P. F. Gremillion, Atty. Gen. of Louisiana, Wm. P. Schuler, Asst. Atty. Gen., of Louisiana, for plaintiff.

A. P. Tureaud, A. M. Trudeau, Jr., New Orleans, La., Robert L. Carter, New York City, Alex L. Pitcher, Jr., Baton Rouge, La., and Jesse N. Stone, Jr., Shreveport, La., for defendant.

In No. 8554:

A. P. Tureaud, A. M. Trudeau, Jr., Ernest N. Morial, New Orleans, La., and Robert L. Carter, New York City, for plaintiff.

Jack P. F. Gremillion, Atty. Gen. of Louisiana, Geo. M. Ponder, Baton Rouge, La., and Wm. P. Schuler, Asst. Atty. Gen., of Louisiana, for defendant.

Before WISDOM, Circuit Judge, and CHRISTENBERRY and WRIGHT, District Judges.

PER CURIAM.

In these consolidated proceedings the Court is required to determine the constitutionality of certain Louisiana statutes (Act 2 of 1924, LSA–R.S. of 1950, 12:401–409 and Act 260 of 1958, LSA–R.S. of 1950, 14:385–388) in the application of these statutes to the National Association for the Advancement of Colored People.

The association alleges that the disclosure of its membership, required under Act 2 of 1924, subjects its members to economic reprisals, loss of employment, threat of physical coercion, and other acts of public hostility, in violation of the First Amendment freedoms of speech and assembly and in violation of the due process clause of the Fourteenth Amendment. The Supreme Court decision of N. A. A. C. P. v. State of Alabama, 1958, 357 U.S. 449, 78 S.Ct. 1163, 1172, 2 L.Ed.2d 1488, controls the case now before us. In that decision, using the phrase "freedom of association" for the first time, the Supreme Court held that the NAACP was protected against forced disclosure of its membership.

Act 2 of 1924 was passed to curb the Ku Klux Klan, then engaged in Louisiana, as elsewhere, in acts of lawlessness and violence. It requires the principal officer in Louisiana "of each fraternal, patriotic, charitable, benevolent, literary, scientific, athletic, military, or social organization" operating in Louisiana to file annually a list of the names and addresses of its membership residing in the state. It provides criminal penalties (mandatory jail sentences) for failure to

file as well as for holding meetings without filing.

A similar statute was held constitutional, as applied to the Klan, in People of State of New York ex rel. Bryant v. Zimmerman, 1928, 278 U.S. 63, 49 S.Ct. 61, 66, 73 L.Ed. 184. In that case, the Court took judicial notice that the Klan "functions largely at night, its members disguised by hoods and gowns and doing things calculated to strike terror into the minds of the people." In N. A. A. C. P. v. State of Alabama, the Supreme Court distinguished People of State of New York ex rel. Bryant v. Zimmerman on the ground that the "decision was based on the particular character of the Klan's activities, involving acts of unlawful intimidation and violence. * * *" Unlike the Ku Klux Klan, the NAACP, however unpopular in Louisiana, officially and unofficially, is not shown to be an organization dedicated to "unlawful intimidation and violence." [1]

Until 1956 Act 2 of 1924 was not enforced. Few, if any, organizations complied with its provisions. After the decision of the Supreme Court in Brown v. Board of Education of Topeka, 1954, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083, the then Attorney General of Louisiana brought one of the actions here in suit to enjoin the NAACP from operating in the state, for failure to comply with the statute. After the Attorney General's action and until the decision of the Supreme Court in N. A. A. C. P. v. State of Alabama, some of the affiliates of the NAACP in Louisiana filed membership lists as required by the statute. Since N. A. A. C. P. v. State of Alabama, the NAACP has not complied.

The documentary evidence submitted by the NAACP shows that some members, after exposure as members, have been subjected to certain economic reprisals. The Court's attention is called to the fact that the record shows that a large part of the NAACP membership was made up of teachers, and that Louisiana statutes deny employment to teachers [2] and others [3] who believe in the integration of the races in public schools. After disclosure of the membership of NAACP affiliates in Louisiana, virtually *all* the teachers resigned and the general membership was reduced significantly.[4]

In N. A. A. C. P. v. State of Alabama, denying the State of Alabama access to the membership lists of the NAACP, the Supreme Court stated: "We hold that the immunity from state scrutiny of membership lists which the Association claims on behalf of its members is here *so related to the right of the members to pursue their lawful private interests privately and to associate freely with others in so doing as to come within the protection of the Fourteenth Amendment.* And we conclude that Alabama has fallen short of showing a controlling justification for the deterrent effect on the free enjoyment of the right to associate which disclosure of membership lists is likely to have." 357 U.S. at page 466, 78 S.Ct. at page 1174. There is no difference at law between that case and this case.

There is no need to discuss Act 260 of 1958 at length. In open court the Attorney General conceded that the state was not interested in pressing the argument as to the constitutionality of the Act. He cited no authority in the brief. The state's concession is understandable. Act 260 would require, as a

1. The certificate of incorporation of the NAACP provides that its " * * * principal objects * * * are voluntarily to promote equality of rights and eradicate caste or race prejudice among the citizens of the United States; to advance the interests of colored citizens; to secure for them impartial suffrage; and to increase their opportunities for securing justice in the courts, education for their children, employment according to their ability, and complete equality before the law."

2. LSA–R.S. of 1950, 17:462.

3. LSA–R.S. of 1950, 17:493.

4. Since 1955, the year before the injunction proceedings were begun against the NAACP, the number of NAACP branches in Louisiana has declined from 65 to 10 and the total membership has declined from 13,000 to 6,000.

prerequisite for conducting activities in the state, that "every non-trading corporation, partnership or association of persons engaged in social, educational or political activities, affiliated with any similar non-trading corporation, partnership or association of persons chartered, created or operating ·under the laws of any other State, shall file &ast; &ast; &ast; an affidavit attesting to the fact that none of the officers of such out of State or foreign corporation, partnership or association of persons with which it is affiliated is a member of any organization cited by the House of Congress (sic) un-American Activities Committee or the United States Attorney General, as Communist, Communist-front or subversive." The statute would require the impossible. It is clearly unconstitutional. N. A. A. C. P. v. State of Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488; De Jonge v. State of Oregon, 299 U.S. 353, 57 S.Ct. 255, 81 L.Ed. 278; Near v. State of Minnesota, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357.

A judgment and injunctive order will be issued in accordance with this opinion.